# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDDIE L. HODGES,<br><br>        Plaintiff,<br><br>v.<br><br>OFFICER OREN MCBURNIE, OFFICER CHRIS WILLIAMS, and Unknown Officers Individually and in their Official Capacity as City of Chicago Police Officers,<br><br>        Defendants. | Case No. 09-cv-7869<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Arlander Keys |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eddie L. Hodges ("Plaintiff") filed this one count complaint against Defendants Officer Oren McBurnie and Officer Chris Williams (collectively "Defendants") alleging Defendants delayed seeking medical care for Plaintiff's serious medical needs while Plaintiff was in police custody. Plaintiff claims Defendants' failure to provide him with timely medical attention violated Plaintiff's constitutional rights. Defendants now move for summary judgment alleging no evidence exists to show that their conduct was objectively unreasonable under the circumstances. Alternatively, Defendants seek summary judgment alleging that they are entitled to qualified immunity. For the reasons that follow, the Court denies Defendants' motion.

## BACKGROUND

The following relevant facts are undisputed, unless specified otherwise. Plaintiff is a former Chicago police officer who retired in July 2006 after working as a beat officer for nearly 35 years. (Defs.'s Joint Reply to Pl.'s Rule 56.1 Statement of Add'l Facts ("Defs.' Resp. to SOF") ¶¶ 3-4.) On December 21, 2007, Plaintiff became involved in an altercation with the owners of a private residence. (Pl.'s Answers to Defs.' Joint Local Rule 56.1 Statement of Facts

("Pl.'s Resp. to SOF") ¶ 4.)  The altercation began around 5:00 p.m. when Plaintiff pulled his vehicle onto the concrete pavement at the rear of the private property to let out a passenger.  (*Id*. at ¶ 4.)  While Plaintiff was parked on the property, the homeowners arrived and used their vehicle to block Plaintiff from leaving the area.  (*Id*. at ¶ 4.)  The homeowners apparently believed that they were victims of a burglary attempt.  (Pl.'s Dep. 41:12-42:1.)  Plaintiff, on the other hand, initially believed that he was the victim of an attempted "stick up" and his heart began to race.  (Defs.' Joint Local Rule 56.1 Statement of Facts ¶ 4.)  Plaintiff also experienced chest pain and had difficulty breathing.  (*Id.*)  When the homeowners, the Orr brothers, exited their vehicle, Plaintiff also exited his vehicle and placed his hand on a weapon concealed under his jacket.  (Pl.'s Dep. 38:8-24.)  One of the Orr brothers stayed with Plaintiff while the other brother went to the house to determine if it had been burglarized.  (*Id.* at 49:18-24).  The Orr brothers refused to move their car despite having confirmed that no one had broken into their home and despite Plaintiff's request that he be allowed to leave.  (Pl.'s Dep. 49:16-50:14).

Plaintiff and the Orr brothers engaged in a stand off in the alley from approximately 5:00 pm until the defendant officers arrived at the scene sometime after they received a call at 9:07 p.m. about a person with a gun.  (Defs.' Resp. to SOF ¶ 10; Pl.'s Resp. to SOF ¶¶ 3-4.)  Plaintiff experienced chest pain and difficulty breathing during the entire period that his vehicle was blocked behind the Orr brother's home.  (Pl.'s Dep. 61:19-62:5.)  Plaintiff initially attempted to persuade the Orr brothers to remove their vehicle by telling them that he was a retired police officer and that people of Plaintiff's age do not break into homes.  (Pl.'s Dep. 57:17-23) Plaintiff realized that the Orr brothers had him at a disadvantage and decided to patiently wait for them to remove their vehicle.  (*Id.* at 59:1-3.)  Three hours into the standoff, Plaintiff called

911 four or five times between 8:15 p.m. and 9:00 p.m. (*Id.* at 50:19-22.) Plaintiff testified that he called the 911 calls because he needed medical assistance or police help. (*Id.* at 53:1-12.)

Upon their arrival, Defendants conducted an investigation and spoke with Plaintiff and the Orr brothers. (*Id.* at ¶ 6; Pl.'s Dep. 72:21-73:23.) Plaintiff testified at his deposition that he informed Defendants upon their arrival that his chest was hurting, that he was having difficulty breathing, and that he needed medical treatment. (Pl.'s Dep. 72:21-73:6; 73:24-74:12; 81:12-22.) Plaintiff also informed Defendants that he was a retired police officer and showed them his license and police identification. (*Id.* at 72:21-73:2.) Plaintiff testified that while he was at the scene that he asked Defendants to take him to the hospital on two occasions. (*Id.* at 83:20-84:1.) Plaintiff also told Defendants that he wanted to sit down and then he went to his car to do so. (*Id.* at 81:2-11.) Defendants dispute Plaintiff's claim that he requested medical treatment or that he be taken to a hospital while he was at the scene of the altercation. (Defs.' Resp. to SOF ¶ 11.) The parties also dispute whether Plaintiff exhibited any outward signs of distress. (Pl.'s Resp. to SOF ¶ 8.) Defendant Williams described Plaintiff's general demeanor as that of an "older gentleman" who was soft-spoken. (Williams' Dep. 41:20-42:2.)

During the course of the police investigation, Defendants called a supervisor to the scene because Plaintiff was a retired police officer. (Williams' Dep. at 37:1-7.) Plaintiff admits that he did not inform the supervisor, Sergeant Dennis Smith, of his need for medical attention. (Pl.'s Resp. to SOF ¶ 7.) At Sergeant Smith's direction, Defendants placed Plaintiff in police custody. (McBurnie's Dep. 21:18-20.) Defendants took possession of Plaintiff's weapon and placed him in their squad car to transport him to the Fifth District police station for processing. (Williams' Dep. 68:11-69:69:24.)

Defendants took Plaintiff to the Fifth District police station and charged him with aggravated assault and failure to register his weapon. (Pl.'s Resp. to SOF ¶ 9.) Plaintiff was placed in an interview room at the police station where he was handcuffed to a wall while Defendants prepared the police reports for Plaintiff's arrest. (*Id.*; McBurnie Dep. 42:5-11.) Several officers familiar with Plaintiff entered the interview room and spoke with Plaintiff. (Pl.'s Resp. to SOF ¶ 9.) Plaintiff remained in the interview for "a while" before he complained that he needed to see a doctor. (Williams' Dep. 56:21-57:8.) Defendant Williams then called for an ambulance and Plaintiff was taken to Roseland Hospital at approximately 11:45 p.m. (Defs.' Resp. to SOF ¶ 12.) Plaintiff was diagnosed as having suffered a heart attack and remained hospitalized for five days. (*Id.* at ¶¶ 16-17.)

On December 18, 2009, Plaintiff filed the instant action alleging that Defendants denied him timely medical attention for his serious medical needs while in police custody in violation of his rights as protected by 42 U.S.C. § 1983 and the due process clause of the Fourteenth Amendment. (Dkt. No. 1 p. 3.)

## **LEGAL STANDARD**

Summary judgment is appropriate when the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006); FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact, and judgment as a matter of law should be granted in its favor. *Vision Church*, 468 F.3d at 988. Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger*

*Whitmore's Auto Servs. v. Lake County, Ill.,* 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson* v. *Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

## DISCUSSION

**1. Defendants' Attention to Plaintiff's Medical Needs**

Defendants argue that they are entitled to summary judgment because there is no evidence demonstrating that their actions were unreasonable in response to Plaintiff's request for medical attention. The Fourth Amendment's prohibition against unreasonable seizures applies to determine whether an officer's acts in responding to the medical needs of a detainee are constitutional. *Sallenger v. City of Springfield*, 630 F.3d 499, 503 (7th Cir. 2010). Four factors are examined to determine whether officers reasonably responded to a detainee's need for medical care: (1) the officer's notice of the detainee's need for medical attention; (2) the seriousness of the need; (3) the nature or scope of the required treatment; and (4) any countervailing police interests, such as the need to prevent the destruction of evidence. *Id.* A medical condition is considered objectively serious if it is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Williams v. Rodriguez*, 509 F.3d 392, 400 (7th Cir. 2007).

The Parties have adduced conflicting evidence concerning when Defendants were put on notice of Plaintiff's need for medical attention. Plaintiff testified that he complained of chest pains and difficulty breathing to the Defendants when they arrived on the scene shortly after 9:07 p.m. Defendants dispute this and claim that they observed Plaintiff at the scene and did not

notice any signs of sickness or distress.  Defendants further claim that Plaintiff only asked to be taken to a hospital while his arrest was being processed at the police station.  Thus, a triable issue of material fact exists as to when Defendants had notice of Plaintiff's medical need.

Turning to the second factor, Plaintiff has produced evidence demonstrating that his medical need was objectively serious.  The evidence suggests that Plaintiff was under a great deal of stress due to the prolonged stand off with the Orr brothers and the prospect of being arrested after having served as a police officer for nearly 35 years.  Further, it would be obvious to a lay person that an "older gentleman" experiencing chest pains should seek immediate medical attention.  Moreover, Plaintiff did indeed suffer a heart attack.  (Levinsky Dep. 11:11-12:12.)  These facts, when viewed in the light most to Plaintiff, are sufficient to withstand summary judgment and thus the issue must be submitted to the jury.

Defendants claim the third factor weighs in their favor because they had no way of knowing that Plaintiff was suffering a heart attack.  Defendants misapprehend their duty under the Fourth Amendment.  Defendants are obligated to provide medical care to detainees in their custody with serious medical needs, not to diagnose a detainee's medical condition.  The question of whether Plaintiff required medical care upon the Defendants' arrival at the scene or at some point after he was taken into police custody is for the jury to decide.

Finally, Defendants seem to argue that their actions in taking Plaintiff to the police station were objectively reasonable because they needed to inventory the "loaded, unregistered weapon" found on Plaintiff's person.  (Defs.' Summ. J. Mem. ("Defs.' Memo") p. 6.) Defendants fail to offer any evidence to explain how this police procedure had any impact on their response to Plaintiff's request for medical attention.  Defendants have failed to offer

undisputed evidence that their actions in response to Plaintiff's serious medical needs were objectively reasonable and thus they are not entitled to summary judgment on this issue.

**2.     Qualified Immunity**

Defendants also seek summary judgment arguing that they are entitled to qualified immunity. (Defs.' Memo pp. 7-10.) The doctrine of qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). To determine whether a government official is entitled to qualified immunity, a district court must decide whether: (1) the facts the plaintiff has alleged or shown demonstrate a federal statutory or constitutional violation; and (2) the statutory constitutional right at issue was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16, 172 L. Ed. 2d 565 (2009). Since the purpose of qualified immunity is to protect public officials from guessing about constitutional developments at their peril, plaintiffs have the burden of showing that the constitutional right was clearly established. *Gonzalez*, 578 F.3d 540. A plaintiff may do so by showing a clearly analogous case establishing a right to be free from the conduct at issue or that the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights. *Id.*

As discussed above, Plaintiff has sufficiently alleged facts to support his claim that Defendants failed to provide him with timely medical care in violation of the Fourth Amendment's prohibition against unreasonable seizures. Thus, the question of whether Defendants are entitled to qualified immunity here is dependent upon whether Plaintiff's right to timely medical attention was "clearly established" in December 2007. Plaintiff relies upon *City of Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1985) for the proposition that it is clearly established that police officers have a duty to provide medical

care for persons taken into police custody. (Pl.'s Resp. p. 3.) While *Revere* is not clearly analogous because it involved a person injured by police while being apprehended, the law is clearly established that once a state takes a person into its custody, it assumes an obligation to provide for his or her basic needs including "food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnegabo County Dept. of Social Servs.*, 489 U.S. 189, 200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). The Constitution imposes this obligation upon the state by virtue of the "special relationship" that the state has with persons in its custody. *King v. E. St. Louis Sch. Dist 189*, 496 F.3d 812, 817 (7th Cir. 2007). The Court also notes that the record demonstrates that Defendants were aware of their duty to provide medical attention to detainees in need. (McBurnie's Dep. 25:3-26:5; Williams' Dep. 56:11-20.) The Court finds that the right to timely medical attention was "clearly established" in December 2007 and thus Defendants are not entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: August 25, 2011

Honorable Sharon Johnson Coleman
United States District Court